Absolutely. All right, Mr. Steed, we're ready when you are. May it please the Court, my name is Jason Steed, I represent Tina Alexander, the appellant in this case. I think that the issues in this case have been narrowed a bit by this Court's decision in the Berry case a few weeks ago, which we notified the Court of in our 28-J letter on Friday. Given that, I think that it's clear that we need to go back to the District Court on reversal and remand, at least on the action to preclude foreclosure, because this Court's already decided in Berry that Wood did abrogate Priester, and that there is no time limit on an action to preclude foreclosure. So that claim at least needs to be— On quiet title, you mean? Sorry? On quiet title. Right. An action to preclude foreclosure, which can be brought as an action to quiet title. I understand that, but do we have a quiet title suit? We have an action to preclude foreclosure that could be characterized as an action to quiet title, which the District Court did in its order dismissing the claims. The District Court recognized that it essentially was an action to quiet title. I don't think that there's any need to use the magic words. So, knowing that we're going back to the District Court at least for that claim, I think there are two important issues that still need to be addressed this morning. One of them is a procedural issue about the handling of a Rule 59 motion. The other is the substantive issue about limitations and whether a limitations period applies to the action seeking forfeiture. I want to set that substantive issue aside for a second and talk about the procedural issue. And the reason I think that the procedural issue regarding the treatment of the denial of the Rule 59 motion is important is because we don't actually need to be here. There's no reason that this Court's time should be occupied by this appeal or that the parties on either side should be occupied with this appeal. Had the District Court recognized the applicability of Wood and Garofalo, which the Texas Supreme Court spends some time in Wood, citing and discussing Garofalo and referring to it as essentially a companion decision relevant to these issues. So had the District Court taken that Rule 59 motion and engaged with it and engaged with the Wood decision and the Garofalo decision and recognized that those cases are applicable and the judgment should have been amended, we wouldn't be here. And I think that the only reason we are here is the bank put forward arguments in opposition to the Rule 59 motion that I think we've demonstrated in our briefing are wrong arguments. And the District Court took those arguments at face value, denied the Rule 59 motion without any explanation, and now we're here. So I think that this case provides a good vehicle. We cited some cases about Rule 59 motions and amending a judgment under Rule 59e. And the Court may have noticed that the most recent case I could find where this Court has reversed the denial of a Rule 59 motion based on an intervening change in controlling law was 1961. And that was a, I think it's Lodge No. 12 case, the Lodge No. 12 case that we cited. That means that this is the first case where this Court has an opportunity since 1961 to address the denial of a Rule 59 motion where the Rule 59 motion really should have been This Court has said in prior decisions that there's no requirement that the District Court provide reasons for denying a Rule 59e motion, but when it has said that, for example, there's a case called Brittle, which Brittle is 63 F 3rd 364, and in the Brittle case, the Court said that there's no requirement to give reasons if the reasons for denying the Rule 53, sorry, Rule 59 motion are obvious and apparent on the face of the record. So I think the inverse of that proposition is if the reasons for denying the Rule 59 motion are not obvious and apparent on the face of the record, then the District Court really should explain why the Rule 59 motion should be denied. And I think in this case, had the District Court been under a direction or a requirement that it provide some explanation for why the Rule 59 motion should be denied, it would have engaged more fully with the Wood case and the Garofalo case, and I think would have realized that the bank's arguments were not correct and that the judgment really did need to be amended. So I think this case presents an opportunity for the Court to sort of provide some clarification and instruction to the District Courts about how they should engage with a Rule 59 motion, at least when a Rule 59 motion is based on an intervening change in controlling it. You're saying we should tell them they have to write something? Usually denying, I don't know if you grant summary judgment, you're supposed to put forth your reasons. I mean, usually you deny a motion. There's, it might be a good practice, but I don't know the requirements to give reasons. Well, so there, a Rule 59 motion, there are three grounds for amending a judgment under Rule 59e. There's new evidence, or there's a manifest error of factor law, or there's the intervening change in controlling law. I do think that what the Court said in Brittle, where if the reasons for denying the motion are obvious and apparent on the face of the record, then you don't need to explain. And I think at least for the first two reasons, that's going to often be the case. And so the Court could deny that Rule 59 motion very frequently, I assume, without providing explanations because it's going to be clear that there's no new evidence or that there's not a manifest error of factor law. But I do think a Rule 59 motion based on an alleged intervening change in controlling law, it's going to be very rare that it's clear on the face of the record why the alleged intervening change in controlling law doesn't require something. There's going to need to be some kind of analysis of what that intervening decision is. The only example I can think of is maybe if the Rule 59 motion alleges an intervening change in controlling law, but the case they cite — I don't think you've seen a lot of Rule 59s because people come up with all sorts of — I mean, many of them are legitimate and need to be seriously considered. But I've seen ones that are just — you know, they cite some case completely off point, and then the Court's already poured all this time into it. Well, I think on its face, maybe if the case cited is clearly not intervening, it comes — it was dated before the judgment, then on its face, there's no need to provide a reason. But I think at the very least, a sentence or two from the Court saying why this doesn't matter would be useful. And here, I think what the requirement does is not so much — it's not so much the explanation that's important, but at least in this case, had the Court faced some instruction that an explanation would either be useful or required, I think the Court would have engaged more with the Wood and Garofalo decisions, and we wouldn't — this Court's time would not be occupied with appeals that aren't necessary. With regard to the substantive issue on whether a limitations period applies to the claim-seeking forfeiture, I think knowing that we go back to the District Court at least on the claim seeking to preclude foreclosure, knowing that we're going back to the District Court anyway already, I don't think that the Court actually has to reach the limitations question on the claim-seeking forfeiture, because we know now from the Wood and Garofalo decisions that Alexander's claim-seeking forfeiture has to be brought as a breach of contract action. She didn't bring it that way because there was no reason to know that she needed to until Wood and Garofalo were decided. So the Wood case, at the very end of the Wood opinion, the Texas Supreme Court indicates that dismissing a claim-seeking forfeiture that was brought as a declaratory judgment action is appropriate because it needs to be brought as a breach of contract action. So I think that the Court in this case could affirm the dismissal of the claim-seeking forfeiture on that narrow ground, that it's — right now it's characterized as a declaratory judgment action. It needs to be — it needs to be brought as a breach of contract action. And then when we go back on the action seeking to preclude foreclosure, Ms. Alexander will have the opportunity to amend her complaint, re-plead her facts and her causes of action, and she can re-plead the action seeking forfeiture as a breach of contract action and allege the necessary facts for that action. So I think that the limitations period as a — if it applies and how it would apply to the forfeiture claim doesn't necessarily have to be reached by the Court. Now that being said, if the Court wishes to reach that question, we've made the argument that under the language of Wood and Garofalo and the plain language of Section 50, I think there's a good argument that no time limit applies to a claim-seeking forfeiture. However, with Garofalo characterizing this as a breach of contract action, it's also arguable that it would be treated like any other breach of contract action, and in that case, Texas law — Texas contract law would govern. That would mean that a four-year limitation period might apply to that claim-seeking forfeiture. But I think it's very important to understand that the — that claim does not arise — it's clear from the plain language of Section 50, as well as the language in the Wood opinion and the Garofalo opinion, it's clear that that claim-seeking forfeiture is not triggered until you have notice and 60 days and a failure to cure. That means that that claim cannot arise on the day of the loan's origination, because that's day one, and the lender gets notice and 60 days to cure before the forfeiture claim arises. So I can't have a claim for forfeiture on day one if the lender hasn't gotten its 60 days to cure yet. So the claim for forfeiture does not arise on the day of origination. It arises after notice, 60 days, and a failure to cure. And the Texas Supreme Court in the Wood decision actually points out explicitly — this is page 549 of the Wood opinion. It's under headnote 10 if you have the Westlaw version, but the Texas Supreme Court says these cure provisions — and this is referring to Section 50A6Q10, which is the cure provision that provides for the forfeiture remedy. The court says these cure provisions are the sole mechanism to bring a loan into constitutional compliance. Further, while a lender has 60 days to cure after notice, the borrower has no corresponding deadline by which it must request a cure. So the Texas Supreme Court is recognizing here that in Section 50, the notice that the borrower has to provide to the lender to trigger the 60-day cure window, which would then trigger the forfeiture remedy if there's a failure to cure, there's no time period in which that notice has to be given. There's no deadline for that. So from the date of the origination of the loan, 15 years into the loan, at that point the borrower can say, hey, there's this deficiency. I'm notifying you as the bank that there's this deficiency. The bank then has 60 days to cure. If at that point there's a failure to cure, the forfeiture claim arises. And if there's a limitations period, that's when that limitations period would begin, is from the time where that notice and 60-day and failure to cure episode occurs. So again, I don't think that the court has to reach the question about whether limitations applies, but if it does, I think that there's an argument that there's no time limit or there's an argument that if there is a time limit, that's when it would be triggered and that's when it would expire. If there are no further questions, I'll reserve your remaining time for rebuttal. All right. Thank you, sir. Mr. Luce. May it please the Court, my name is Tom Luce. I'm here representing Appleby Wells Fargo. I think my colleague has gotten a little bit ahead of himself when he says we all know that what he calls the action to preclude foreclosure is going back anyway. I want to talk about three things today. First, I want to talk about the proper construction of Texas Constitution Rule 50-A-6, as explained in Wood and Garofalo. Second, I want to talk about the application of the principles from those cases to the specific claims that Alexander raises in this appeal. Third, time permitting, I'd like to address briefly a couple of the cases that Alexander cites in her Rule 28J letter. Turning to Wood and Garofalo, those cases provide a framework for application of the constitutional provisions at issue here. There are a number of principles we can glean from those cases. The first is 50-A-6 does not create substantive rights beyond the defense to foreclosure if the loan that is created is constitutionally noncompliant. From Garofalo, we know that the Constitution, quote, lays out the terms and conditions a loan must include if the lender wants the power to foreclose. In other words, the loan must be made on condition that it includes the provisions set out in subsection Q. And I'm going to focus on the subsection Q requirements because that's the only provision that Alexander's raised in this case. Garofalo teaches that those terms and conditions are not constitutional rights and obligations unto themselves. They only assume constitutional significance when their absence from a loan's terms is used as a shield to prevent foreclosure. What Garofalo teaches is that the Constitution prohibits foreclosure when a home equity loan fails to include a constitutionally mandated term or condition. From those principles, there are two sort of take-home points that I think are particularly applicable to the arguments that Alexander raises here. First, if a loan does include the terms set forth in subsection Q, then it meets the requirements of the Constitution. You have created a constitutionally compliant loan. The lien under that loan is valid, and there's no basis, constitutionally speaking, for a quiet title claim on the basis of a noncompliance with those terms. If those terms in subsection Q are included in the loan, then the failure to comply with one of those terms is remediable only by an action for breach of contract. So those are the principles that I think guide the Court's analysis in evaluating the specific claims that Alexander raises here. There are two critical facts, I think, that the Court ought to bear in mind in evaluating her claims. First, there's only one relevant allegation in her complaint that speaks to the claims that she's arguing on appeal, and that is that there was no fair market value acknowledgement provided when the loan was closed. That's the only allegation that's really at issue here. Secondly is an admission. In Alexander's reply brief, she was speaking in terms of the provisions of Section 50A6Q, and she said, quoting Garofalo, that those provisions are required to be included in a foreclosure-eligible home equity loan. That's exactly what Garofalo says, and Ms. Alexander goes on to say, and in this case, these provisions are, in fact, incorporated as terms of the loan agreement. That is constitutional compliance. Once those terms are incorporated in the loan, the loan is constitutionally compliant, and the failure to comply with those loan terms is a breach of contract. It is not a constitutional violation. Turning to the claims that she's brought in this appeal, the first, she says, is a foreclosure claim. In the District Court, that claim was asserted as a direct violation of the Constitution, and forfeiture was the only remedy that she sought. But we know from Wood and Garofalo that there is no such thing as a constitutional claim for forfeiture. There is no such thing as forfeiture for a constitutional violation. What there is is a failure to comply with the terms and conditions that are incorporated in the loan. Once those are part of the loan agreement, they are terms of a contract. Failure to comply with those terms that are in the contract is a breach of contract. Forfeiture, and Garofalo and Wood were both very clear, forfeiture is a remedy for that breach of contract. In this case, the underlying breach of contract would be failure to provide the acknowledgement. Forfeiture is a potential remedy. It is triggered, that's the word used in Garofalo, I believe, triggered when the lender is given notice of a failure to comply and it doesn't cure that failure to comply. But forfeiture is not a cause of action. Forfeiture is not a claim. Forfeiture is not independent of the underlying breach of contract. And just to close out that thought, it is a breach of contract claim for which forfeiture is a remedy. Breach of contract, of course, is governed by a four-year statute of limitations. That claim accrued at the time the loan was closed. And I want to direct the Court's attention to Priester. Even if it accrued after the cure period, didn't that all happen the first time in 2002? Didn't Alexander ask for the notice, this lack of acknowledgement in 2002? So wouldn't it have accrued then at the latest? I think that you're mistaking the notion that there is a claim for forfeiture as opposed to a claim for breach of contract. Now what I'm saying is you win even under their theory. But if you don't want to take that argument, that's fine. Then I don't think I understood your question. Their position is a breach of contract claim for forfeiture accrues after the cure period ends, which they want to say is when she filed the lawsuit. But I thought that all happened also in 2002. Isn't that when she? Let me back up. The failure to give the acknowledgement occurred at loan closing. Right, but she asked for it in 2002, didn't she? She did send a letter requesting. And you didn't cure it. It was not cured. So I'm saying even under their theory, wouldn't that have been the date at which the breach of contract, four years would have started running, and that was ten years ago? No, Your Honor, that wouldn't have been the date that a breach of contract. And I think that this. No, but under their theory. They claim that the failure to cure is an independent breach of contract, and that's wrong. Right, but even if they're right, all right, you don't want the help. That's fine. Don't take it. Well, I think I must not understand where you're headed with that, Your Honor. If they're right, she asked there was a failure to cure in 2002. That's when the claim would have accrued, four years, ends in 2006. The lawsuit's ten years too late. If you treat the failure to cure as an independent breach of contract, yes, that would be too late too. I don't think that's the correct analysis. You don't get what I'm saying. Fine. But I'm saying under your theory or under their theory, isn't it out of time? Yes, Your Honor, that's correct. I understand your position on when it accrues. Okay. And I think this Court's decision in Priester answers the question about when the claim accrues. And speaking to their alternative argument that the failure to cure is also an independent breach of contract, that argument was raised and rejected in this Court's decision in Priester. Priester I think about as, well, that's the case that held that the four-year statute of limitations applies to constitutional claims, and that was the part that was abrogated in Wood. The second part of the opinion in Priester goes to the question of accrual of a cause of action. And in that case, the Priesters contended that limitations, quote, runs at the notice of demand for cure of the constitutional deficiencies or failure to cure. And this Court rejected that argument. Applying the black-letter rule that claims accrue when a wrongful act causes a legal injury, this Court held that injury occurred when the Priesters created the lien, which would have been at origination. So the question whether the failure to cure supports an independent cause of action for breach of contract is answered in Priester, and Priester rejected that argument. The Court in both Wood and Garofalo was very careful to distinguish between the remedy for breach of contract, the remedy of forfeiture, and the cause of action that would enable you to access that remedy, which is for breach of contract, as I said. And so in this case, the relevant inquiry is when the cause of action for breach of contract accrued. That accrued immediately upon loan origination. As an example, the day after this loan closed, Miss Alexander could have sued for breach of contract. She could have sought specific performance of the term in her loan that said, you're going to give me a fair market value acknowledgement. That day, she could not have sued for forfeiture because the lender would have had 60 days after having notice of that failure to comply to correct that failure to comply. But even though that remedy would not have been immediately available, the cause of action for the underlying breach of contract would have accrued. Garofalo was careful also to distinguish between the failure to comply and the failure to correct the failure to comply, which is the cure provision. Garofalo made very clear that the failure to comply applied to the original transgression. In this case, that is the failure to provide a fair market value acknowledgement. The breach is not the failure to cure. And the last point on that, Your Honor, is the cure provision, which is subsection QX or Q10, it doesn't create a contractual obligation to cure the loan. It doesn't say you shall cure. It says the consequence of failing to cure. And the forfeiture remedy, if that term is incorporated into the loan, is triggered by failure to cure, but that's not an independent cause of action. And Judge Costa, as you pointed out, it accrued at the time of origination, or if there was an independent breach of contract for failure to cure, that accrued in 2002 when she notified the bank, or a reasonable time after that when the bank did not respond to that letter and cure. So I've talked about the two breach of contract claims that Alexander's asserted. I want to turn to the third claim, what she calls an action to preclude foreclosure, and what the Wood case calls a quiet title claim, although the two are not synonymous. Throughout Alexander's briefing, she says, I asserted an action to preclude foreclosure, i.e., that is quiet title. But, of course, there's lots of reasons why a borrower might seek to preclude foreclosure. For example, in this case, Alexander said she paid the amounts that were owed under her loan. She says, in essence, I didn't breach the loan agreement. You breached it by charging me more than was owed. That could be the basis for an action to preclude foreclosure. That action is not based on invalidity of the lien alone. But more important to the question, did you plead it or not, or is an action to preclude foreclosure part of this case, the more important point here is that Alexander didn't plead any facts that would support a quiet title claim based on the Texas Constitution. Recall that the only facts that she alleged were— Why did Judge Lake call it that? I'm sorry, Your Honor? Why did Judge Lake call it a quiet title claim? I don't think he did, Your Honor, and let me explain. In her response to the motion to dismiss, Ms. Alexander, her argument was essentially a block quote from a case called Smith v. J.P. Morgan. And in the Smith v. J.P. Morgan, there was a quiet title claim. And in Smith v. J.P. Morgan, the court in that case said an action to quiet— I'm going to paraphrase, I don't recall— but basically said an action to quiet title wouldn't be barred. And in the court's memorandum opinion on the motion to dismiss, it referred to that language quoted from Smith v. J.P. Morgan and referred to the quiet title there. In her response to the motion to dismiss, Ms. Alexander did not say, I've asserted a quiet title. She just block quoted from that other case. And in its decision, there's no indication that the district court was evaluating and concluding that there actually was a quiet title claim as opposed to simply reciting the arguments that Alexander had made in response to the motion to dismiss. So I don't think the court actually made that determination. But here, the only allegation that's relevant to the claims here is there was no acknowledgment of fair market value. But Ms. Alexander says the term from subsection Q requiring the fair market value acknowledgment was one that was incorporated in the loan. That makes the loan constitutionally compliant. And you go to the next step, which is, did you comply with those provisions that were incorporated in the loan? That's a breach of contract. Because the loan is constitutionally compliant, the validity of the lien is not implicated. And so there's no constitutional basis to claim that the lien created by this loan is invalid, and consequently, Alexander pleaded no facts that would plausibly support a quiet title claim, regardless of how she wants to characterize it as an action to preclude foreclosure or otherwise. The facts she alleged support only a claim for breach of contract for the failure to comply with the term incorporated in her loan. Turning briefly, my colleague opened up with a brief discussion of this Court's decision in Aukland Loan Servicing v. Barry. From that case, and Chief Judge Stewart, I know you were on the panel in that case, but from the opinion, it's not entirely clear what allegations the borrower was making. But the opinion does recite that the borrower alleged that the security interest was unenforceable because there were multiple violations of the Constitution. If the security interest is unenforceable, is invalid, that is squarely within the decision in Wood, which says if you don't comply with the Constitution, if you create a constitutionally noncompliant loan, then the lien is not valid, and there is no statute of limitations applicable to that defense to foreclosure. It appears then that Barry would be a straightforward application of Wood. Here, as I said a moment ago, no facts have been alleged that would suggest that the lien was invalid because the Constitution only says if you incorporate the required terms and conditions of the Constitution into your loan agreement, it's constitutionally compliant and the lien is valid. A case that my opponent did not mention, Carrington Mortgage Services, is a little bit more problematic, and I want to mention that because I think the analysis in that case is wrong for a lot of the reasons that I think the analysis in Ms. Alexander's arguments is wrong. In that case, it also involved a fair market value acknowledgement. The opinion suggests, but it's not very clear, that that term was incorporated into the loan. If that term from Subsection Q was incorporated into the loan, then the loan was constitutionally compliant and the failure to provide that acknowledgement would not implicate the validity of the lien. It would simply be a breach of contract for the breach of that term in the loan. That breach of contract claim does not support a good defense to an action for foreclosure because it doesn't implicate the validity of the lien. The second problem with Carrington that I think is equally problematic, in that case the court wrote that the lender provided the acknowledgement of fair market value a few days after the loan was closed. The relevant provision in Subsection Q says that that fair market... that acknowledgement needs to be provided when the credit is extended at loan origination. What the court, I think, does not appreciate is that Subsection QX provides a specific cure provision if the acknowledgement is not provided, and that is to obtain the appropriate signatures. And so in Carrington, if the appropriate signatures were included on the acknowledgement, then the bank cured any defects within a few days. And there wouldn't be, one, a good breach of contract claim based on that failure to comply because that failure is cured, and that failure to comply wouldn't support an argument that the lien was invalid in the first place, which would go to a defense to foreclosure. One way that, in preparing for argument, I thought was helpful in evaluating these claims is this, sort of a decision tree. At the time that the loan is originated, there are two possibilities. One is the loan is constitutionally compliant, and one is that it is not. If the loan, in this case, incorporates the terms of Subsection Q, as Ms. Alexander admits, then the loan is constitutionally compliant. The lien created under that loan is valid, and there is no constitutional-based grounds to assert a quiet title claim. The other branch of that tree is the loan does not incorporate the terms, and that makes it constitutionally not compliant, and a lien created under that loan would not be valid. It would be invalid from the start, invalid until cured, as Wood says. In this case, she didn't allege that the lien was invalid. There's no basis for a claim for quiet title. Secondly, the failure to comply with a term that is incorporated, as she admits was incorporated in her loan, gives rise only to a breach of contract claim, and we've addressed in our brief why... That's governed by four-year statute of limitations, and we've addressed in our brief why there isn't any kind of exception to that or new kind of breach of contract created by the Texas Supreme Court that would not be subject to that limitations rule. If the Court has no further questions, I will sit down. All right. Thank you, Mr. Lucey. Thank you, Your Honor. All right. Back to you, Mr. Stee. I think that... Picking up on the question I asked on the other side, on the breach of contract, your position, because she... There was a failure to cure in 2002, so your position has to be that each time there's a failure to cure, a cause of action for breach of contract with a forfeiture remedy accrues each time that happens? Right, and the reason why is, as the Texas Supreme Court makes clear in Wood and Garofalo, the entire purpose of Section 50, its reason for being, is to protect borrowers and to protect the homestead against foreclosure. Well, and that's why they said there's really no statute of limitations to prevent foreclosure. Exactly. But on breach of contract, that's a common law. I mean, they draw that distinction between constitutional-based remedies and common law. Right. But the reason that in Section 50 there's this cure provision that provides this, what the Court calls a draconian remedy of forfeiture, the reason that that's there is to provide protection to the borrower and to protect the borrower against the failure to provide all the things that need to be provided under Section 50. If forfeiture as a remedy at some point evaporates and is no longer available to the borrower, then that severely undermines the whole purpose of Section 50. And the reason the forfeiture remedy is there, the reason it's available, is to protect the borrower to make sure that all these things under Section 50 are included. But why should you get multiple? I mean, in 2002, she knew this acknowledgment wasn't given. She asked them for it. They don't give it. Why doesn't she file a breach of contract then? I mean, now she can just keep doing it over and over, under your theory. Well, right. And she could have. So if this is a breach of contract action, which is the way the Texas Supreme Court says it needs to be brought to get forfeiture as a remedy, then Texas contract law applies, and it's well settled in Texas contract law that when there's a breach, the non-breaching party has a choice. They can sue on that breach or they can treat the contract as continuing and move on. But when there's another breach, then they again have that choice. They can sue for the breach or they can treat it as continuing and move on. And so what happens is in 2002, there's a breach. There's notice. There's 60 days. There's no cure. She could sue at that time or she can continue to try to work this out between she and Wills Fargo and treat the contract as continuing. But it's the same breach, the failure to provide the acknowledgment. So there's an underlying breach. I think what would... So this is fuzzy before Wood and Garofalo come out, and what Wood and Garofalo, I think, teach us is some clarification about how this works. Before Wood and Garofalo come out, the precluding foreclosure and the forfeiture as remedies, there's a lot of sort of conflation of the two as though this is all under one constitutional claim, and the district court actually characterizes her, what she's seeking, as a singular claim. And, in fact, the dissent in Wood by Chief Justice Hecht, he does sort of the same thing, kind of conflates the two. But I think what Wood and Garofalo teach us is that these are two separate things. Like any other... If we're treating these as contract provisions incorporated into the loan agreement, you have a provision that requires this acknowledgment, signed acknowledgment, and then you have another requirement that requires a cure in 60 days or you face forfeiture as a remedy. Those two requirements are separate things, and there are separate remedies attached to those. So failing to provide this acknowledgment means you can't foreclose on the loan. Failing to cure after 60 days means you face forfeiture. Those are two separate things, and they trigger two separate remedies. So, and Wood and Garofalo, I think, clarify that. What the bank is arguing right now is that merely incorporating the provisions of Section 50 into the loan agreement makes the loan agreement constitutionally compliant. That's what my friend on the other side stood up here and said over and over and over again. That is absolutely wrong. That is not what Wood and Garofalo stand for. If there is any requirement or condition under Section 50 that is not satisfied, then under Section 50, that loan is noncompliant and cannot be foreclosed upon. The lien is invalid, ab initio, and you cannot foreclose on that loan if any condition is not satisfied. It's not just if the terms weren't incorporated into the loan agreement. It's if any of those terms and conditions are not satisfied, then the lien is invalid and you can't foreclose. So the bank is trying to characterize this as all we have to do is incorporate those provisions into our agreement, and then we can violate the provisions all we want, and we can still foreclose on it because we've incorporated the terms into the loan agreement. That is not what any of this means. They have to satisfy the requirements and conditions in order for the loan to be foreclosure eligible, and then there's this other provision that provides forfeiture as a remedy for the borrower if they don't cure one of those deficiencies in a timely manner. And under Texas contract law, successive breaches trigger successive limitations periods if a limitation period applies here. But again, I'm not sure that the court has to reach that in this case. So we would ask for reversal and remand if there are no other questions. All right, thank you, Mr. Steele. You are pro bono counsel? Yes. You picked up in this one at what stage of the deal? After the notice of appeal had already been filed, and so I picked up and filed an extension for the brief. All right, well, here's just a salute from the panel to you and all pro bono counsel who take on this and other cases to provide counsel in a case. And irrespective of the outcome of the case, you and other pro bono counsel who agree to do this is very much appreciated by us as judges and by the court as a whole. It's kind of unknown to a lot of the public as we're focusing on Law Day and celebration of the rule of law, and almost all our states have inadequate services for people to access, and so the pro bono counsel play a pivotal role in making the rule of law meaningful. So we're appreciative that you're in the case and providing able counsel for that. Having been said, we thank both of you for the good briefing and argument in the case. It will be submitted. Thank you, sir. All right, Mr. Amey and Mr. Clark.